IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 15, 2015 at Knoxville

**STATE OF TENNESSEE v. ROBERT SPENCER**

**Appeal from the Criminal Court for Shelby County**
**No. 11-03349     Glenn Wright, Judge**

––––––––––––––––

**No. W2014-02454-CCA-R3-CD – Filed January 27, 2016**

––––––––––––––––

Following a jury trial, the Defendant, Robert Spencer, was convicted of one count of possession with intent to sell twenty-six grams or more of a substance containing cocaine and one count of possession with intent to deliver twenty-six grams or more of a substance containing cocaine, both Class B felonies. See Tenn. Code Ann. § 39-17-417(a)(4), (c)(1), (i)(5). The trial court imposed a total effective sentence of fourteen years. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to sustain his convictions; (2) that the trial court erred by allowing an investigator to testify about statements made by a "cooperating source"; and (3) that the trial court erred by failing to merge his convictions. Following our review, we affirm the Defendant's convictions. However, we merge the Defendant's convictions and remand the case to the trial court for entry of corrected judgment forms reflecting said merger.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Case Remanded for Entry of Corrected Judgment**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Stephen C. Bush, District Public Defender; and Phyllis L. Aluko (on appeal) and Michael J. Johnson (at trial), Assistant District Public Defenders, for the appellant, Robert Spencer.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Marianne Lea Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

Special Agent Greg Flint of the West Tennessee Drug Task Force (DTF) testified that on March 10, 2011, he began an investigation of a house on Olympic Street in Memphis. Agent Flint testified that he had investigated over 1,000 narcotics cases and that he would often use "cooperating" individuals to identify drug traffickers. Agent Flint began his investigation of the house on Olympic Street after he "had received information from a cooperating source." Agent Flint testified that the source provided him with a description of a house on Olympic Street, the name and description of an individual, a phone number, and "information about activity at the house." Over the Defendant's objection, Agent Flint testified that the house in question matched the source's description.

On March 10, 2011, Agent Flint "conducted surveillance" on the house for approximately thirty minutes. During that time, Agent Flint observed "a very large amount of foot traffic" going to and from the house. Agent Flint explained that he saw approximately fifteen individuals each walk up to the house, go inside for "two minutes or less," and then leave. Agent Flint testified that in his experience, a "large amount of foot traffic" to a house was "indicative . . . that [those] individuals . . . [were] going to that house to purchase narcotics." Agent Flint testified that he watched the house again on March 11, 2011, for twenty to thirty minutes and "observed a similar pattern of traffic in and out" of the house.

Agent Flint obtained a search warrant for the house on Olympic Street, and he and a team of other DTF agents executed the warrant on March 15, 2011. The DTF agents waited until they "observed an individual" walk up to the front porch of the home. At that point, they detained the individual and pounded on the door, announcing that they were there to execute a search warrant. After receiving no answer, the agents opened the unlocked door and entered the house. Upon entry into the house, the agents observed "a very large projection-style television . . . facing the door" and "projecting a live video feed" of the front porch. A surveillance camera was found "mounted to the front porch." Agent Flint testified that it was not uncommon to find surveillance systems at "[d]rug houses."

The Defendant was found in the rear bedroom of the house. Over the Defendant's objection, Agent Flint testified that the Defendant matched the description of the individual provided by his cooperating source. No one else was found inside the house. A search of the Defendant's person revealed $651 in cash and a cellular telephone with the name "P.A. Ralph" programmed into it. Agent Flint testified that only the front room and one of the bedrooms in the house were furnished. Agent Flint opined that it did not appear that "more than one person was living in the house." Agent Flint admitted on cross-examination that the owner of the home was named Carl Stotts and that the

Defendant's driver's license listed a different address as his residence. Agent Flint testified that Mr. Stotts was not present at the house when it was searched.

In the front room of the house, agents found "a box of clear plastic sandwich bags." Agent Flint explained that those types of bags are "often used to package narcotics" for sale. Agents then found "a small opening in the ceiling that was covered with a piece of plywood." Inside the attic, agents found two "large" rocks of what appeared to be crack cocaine hidden in the insulation; a plastic bag containing a third "large" rock and "a glass beaker with a white powdery residue"; and a cloth bag containing a set of digital scales "with white powder residue" and a bag of white powder, which appeared to be cocaine.

Agent Flint explained that the glass beaker was what is commonly called a "rocking tube" and was likely used "to turn powder cocaine into crack cocaine." Agent Flint also testified that, in his experience, digital scales are often used to weigh drugs for sale. Subsequent forensic analysis by the Tennessee Bureau of Investigation confirmed that the three rocks and the powder were cocaine. The three rocks weighed, in total, 49.16 grams, and the powder weighed 14.03 grams. Agent Flint opined that the Defendant possessed the cocaine with the intention of selling it rather than personally using it given the "large quantity, the digital scale, [and] the glass beaker." Agent Flint also noted that they did not find "any sort of smoking devices such as a crack pipe" during the search of the house.

Melinda Hilliard, an employee with Memphis Light, Gas and Water (MLGW), testified regarding a "residential service agreement" for the house on Olympic Street. Ms. Hilliard testified that utility services were requested for the home on March 2, 2011. The service agreement listed "E.H. Stotts" as the landlord for the home, and the applicant was listed as "Steven Carnes." The form also contained "a nearest relative box." Inside that box an "R" was written and crossed out. The name provided for the "nearest relative" was "Percy Spencer." Ms. Hilliard further testified about the phone number given by the applicant on the service agreement. Agent Flint testified that the phone number provided for "Steven Carnes" on the MLGW service agreement matched the number of the cellular telephone found on the Defendant's person.

Based upon the foregoing, the jury convicted the Defendant of one count of possession with intent to sell twenty-six grams or more of cocaine and one count of possession with intent to deliver twenty-six grams or more of cocaine. The trial court imposed concurrent fourteen-year sentences for each conviction, for a total effective sentence of fourteen years. This timely appeal followed.

<u>ANALYSIS</u>

-3-

## I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions. The Defendant argues that the State failed to establish that he had possession of the cocaine found in the house because it was not found "on [his] person" but was found in the attic, which the Defendant alleges was not easily accessible. The Defendant further argues that the State failed to present sufficient evidence to link him with the house on Olympic Street. The State responds that the evidence was sufficient to sustain the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (internal quotation marks omitted).

-4-

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

It is an offense for a defendant to knowingly possess cocaine with the intent to sell or deliver. Tenn. Code Ann. § 39-17-417(a). "Possession may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013). Simply being in an area where drugs are found "is not sufficient, standing alone, to find constructive possession." Id. Instead, the proof must show that the defendant had "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." Id. (alterations in original) (quoting State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)) (internal quotation marks omitted). "Constructive possession depends on the totality of the circumstances in each case" and "may be proven by circumstantial evidence." Id.

Here, there was sufficient circumstantial evidence to establish that the Defendant had constructive possession of the cocaine found in the attic. Agent Flint testified that he observed the house on two separate days and saw "a very large amount of foot traffic" going to and from the house on both days. Agent Flint explained that, in his experience, a "large amount of foot traffic" to a house was "indicative . . . that [those] individuals . . . [were] going to that house to purchase narcotics." Inside the house, agents found a surveillance system which Agent Flint testified was also indicative that the house was a "[d]rug house." Additionally, only two rooms in the house were furnished, and Agent Flint testified that it appeared only one person lived there.

The Defendant was the only person found inside the house. He was alone in the rear bedroom when the agents searched the house. The Defendant had a large amount of cash and a cellular telephone on him when he was searched. The number for the cellular telephone was the same number listed on the service agreement with MGLW. Agents also found "a box of clear plastic sandwich bags" in the front room of the house. Agent Flint explained that those types of bags are "often used to package narcotics" for sale. Based upon the foregoing, we conclude that the evidence was sufficient to establish that the Defendant had constructive possession of the cocaine found in the attic and that he possessed it with the intent to sell or deliver it.

*II. Hearsay Statements*

The Defendant contends that the trial court erred by allowing Agent Flint to testify about statements made by the "cooperating source." Specifically, the Defendant argues that the trial court erred by allowing Agent Flint to testify that the house on Olympic Street and the Defendant matched the descriptions provided by his source. The Defendant further argues that the error was not harmless because those statements were the only evidence establishing the Defendant "as a resident of [the] house [that was] searched." The State responds that the testimony in question was not hearsay because Agent Flint did not testify regarding any statements. The State argues that Agent Flint's testimony provided his own "personal observations" rather than the source's hearsay statements.

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is not admissible except as allowed by the rules of evidence or other applicable law. Tenn. R. Evid. 802. The questions of whether a statement is hearsay or fits under one of the exceptions to the hearsay rule are questions of law and subject to de novo review by this court. Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015).

The State asserts that Agent Flint's testimony was not hearsay; rather, it was simply a statement of his personal observations. However, Agent Flint's testimony was a form of indirect hearsay. As explained by one treatise, indirect hearsay can occur when:

> [W]itnesses . . . are tempted by lawyers to get in hearsay through the back door.
>
> > Q: After talking to the informant – and don't tell the jury what the informant told you – what did you do?
> >
> > A: I went to the luggage room, found the red suitcase with the defendant's name on it, and found cocaine inside.
>
> Most jurors will get the message intended from this indirect hearsay. They will have learned what the informant said, even though no words from the informant were actually repeated. The testimony is hearsay and inadmissible . . . .

Neil P. Cohen et al., Tennessee Law of Evidence, § 8.01[11][b] (6th ed. 2011).

Here, Agent Flint's testimony was able to relay what the "cooperating source" had told him about the house on Olympic Street and the Defendant in an indirect way. Agent Flint's testimony that the house and the Defendant matched the descriptions provided by

-6-

the source coupled with his testimony about his background in narcotics investigations allowed the jury to learn what the source told Agent Flint, that the Defendant was selling cocaine from the house on Olympic Street. See Clarke v. State, 976 So. 2d 1184, 1185 (Fla. Dist. Ct. App. 2008) (holding that police officer's testimony that a witness' statements were consistent with the victim's statements was impermissible hearsay); Wilding v. State, 674 So. 2d 114, 118 (Fla. 1996) (holding that testimony that detective "received an anonymous tip" which named the defendant was impermissible hearsay). As such, Agent Flint's testimony relayed the hearsay statements of the source.

This court has previously held that "a police officer's testifying to an out of court statement to explain his actions" is not hearsay but cautioned that "in most situations the details of information obtained through a confidential informant should not be admitted at trial." State v. Brown, 915 S.W.2d 3, 6 (Tenn. Crim. App. 1995). Instead, "testimony that [the officer] acted 'upon information received,' or words to that effect, should be sufficient" to explain the officer's actions. Id. (quoting McCormick On Evidence § 249, at 104 (4th ed. 1992)). Here, Agent Flint sufficiently explained that he was investigating the Olympic Street house based on information provided by the "cooperating source," and there was no need for Agent Flint to provide further details about the source's description of the house or the Defendant. Accordingly, we conclude that the trial court erred by admitting Agent Flint's testimony that the house and Defendant matched the descriptions provided by the source.

However, this does not end our analysis. Failure to exclude inadmissible hearsay evidence is subject to harmless error analysis. See State v. Long, 45 S.W.3d 611, 624 (Tenn. Crim. App. 2000). "A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Contrary to the Defendant's argument, there was strong circumstantial evidence that he had constructive possession over the cocaine found in the attic of the Olympic Street house and that he intended to sell or deliver the cocaine. Accordingly, we conclude that the error was harmless.

### III. Merger of Convictions

The Defendant contends that the trial court erred by failing to merge his convictions. The Defendant argues that he committed a single offense which the state chose to prosecute under two alternate theories and that his dual convictions violate his constitutional protections against double jeopardy. The State concedes that the trial court's failure to merge the convictions was error.

Double jeopardy bars convictions for possession with intent to sell and possession with intent to deliver when the convictions are supported by the same proof. State v.

Johnson, 765 S.W.2d 780, 782 (Tenn. Crim. App. 1988). The trial court's failure to merge the convictions constituted plain error. See State v. Edgar Allgood, No. W2008-00870-CCA-R3-CD, 2010 WL 455000, at *8 (Tenn. Crim. App. Feb. 10, 2010). Accordingly, we merge the Defendant's conviction for possession with intent to deliver twenty-six grams or more of cocaine into his conviction for possession with intent to sell twenty-six grams or more of cocaine and remand the case to the trial court for entry of corrected judgments forms reflecting the merger.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the trial court's judgments as to the Defendant's convictions. However, the trial court's failure to merge the convictions constituted plain error. The case is remanded to the trial court for entry of corrected judgment forms reflecting the merger of the convictions.

_____
D. KELLY THOMAS, JR., JUDGE