IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2016

## STATE OF TENNESSEE v. JIMMY WILSON

**Appeal from the Criminal Court for Shelby County**
No. 13-05154       Chris Craft, Judge
_____

**No. W2015-01786-CCA-R3-CD  -  Filed August 10, 2016**
_____


The defendant, Jimmy Wilson, was indicted for theft of property valued at $1000 or more but less than $10,000, in violation of Tennessee Code Annotated section 39-14-103, after unlawfully receiving of $5,875.72 in travel reimbursements from the U.S. Department of Veterans Affairs. Following trial, a jury found the defendant guilty of the same. On appeal, the defendant argues that there was insufficient evidence to support his conviction.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN JJ, joined.

Tony N. Brayton, Memphis, Tennessee (on appeal) and Jim Hale, Memphis, Tennessee (at trial and motion for new trial), for the appellant, Jimmy Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.


## OPINION

### Factual Background

This case relates to the defendant's receipt of $5,875.72 in travel reimbursements from the Memphis Veterans Affairs ("V.A.") Medical Center from September 10, 2010, through January 21, 2011. On those dates, the defendant had medical appointments at the V.A. hospital and subsequently submitted travel vouchers to the hospital for

reimbursement for travel between Tupelo, Mississippi and Memphis, Tennessee. The defendant received $86.32 roundtrip for appointments made in advance and $43.16 one-way for walk-in appointments. The defendant's address of record with the V.A. from September 10, 2010 to November 2010, was 22 North Parkway Terrace, Apartment 21, Tupelo, Mississippi. At some point in November 2010, the defendant changed his address to 202 Jackson Street, Tupelo, Mississippi. Prior to September 10, 2010, the defendant had a Memphis address on file with the V.A. hospital.

The large sum of money paid to the defendant in travel benefits came to the attention of the V.A. hospital when one of the clerks paying the vouchers informed his supervisor, Donna Alcover, that the defendant was in the clinic daily. The clerk asked the defendant for documentation that he lived in Tupelo, but he never provided it. Ms. Alcover reported the suspicious activity to Officer Ralph Hopson, a patrolman employed by the V.A. hospital, whose job duties included the investigation of such activity. Ms. Alcover also looked for the defendant in the clinic and noted that when she arrived at work around 6:30 a.m., he was frequently already waiting in the clinic. In the afternoon, the defendant was often still at the hospital. At trial, Ms. Alcover authenticated a computer printout listing all travel reimbursements paid to the defendant from September 2, 2010 through January 21, 2011, and confirmed the defendant received $5,875.72 in cash for travel between the hospital and Tupelo, Mississippi during that time period.

After Ms. Alcover reported the defendant's suspicious activity and provided him with the list of travel reimbursements paid to the defendant, Officer Hopson began an investigation. There was snow and ice on the ground the day Officer Hopson received the report, and they were having trouble getting employees to come into work. The defendant, however, was in the clinic. The following day, the defendant was again at the hospital, and Officer Hopson attempted to speak with him. When Officer Hopson approached him, the defendant became hesitant to speak and was very defensive. Officer Hopson is from Tupelo and was able to ease into conversation with the defendant by discussing Tupelo and his family members that still reside there. Officer Hopson did not get into the reason for the meeting and instead scheduled another meeting with the defendant four days later. Officer Hopson reminded the defendant of the meeting the day before, yet he failed to appear.

When the defendant did not appear for their meeting, Officer Hopson contacted the Tupelo Police Department about the resident of 202 Jackson Street. An officer knocked on the door, and there was no answer. When Officer Hopson was later in Tupelo visiting family, he also knocked on the door of 202 Jackson Street. This time Jerry Shells, who identified himself as the defendant's cousin, answered the door and said the defendant has never lived at that address. Officer Hopson then turned his investigation over to the Department of Veterans Affairs Office of Inspector General.

Mr. Shells testified at trial and indicated that he never gave the defendant permission to use his address. On one occasion, Mr. Shells received a piece of mail from the V.A. hospital to the defendant, and he returned it as undeliverable. Mr. Shells had last seen the defendant about five years earlier at the V.A. hospital in Memphis.

From September 10, 2010 through January 21, 2011, the defendant frequently stayed at the Memphis Union Mission. According to Jeffrey Patrick, a pastor at the mission, when men check into the mission for the night, they eat dinner and go to chapel prior to going to the dormitories. It is possible to leave the mission after checking in, but if the men leave without going to chapel, they are banned from staying at the mission for the following three days. He checked the records at the mission and looked at the defendant's dormitory report. According to the report, from September 10, 2010 to January 21, 2010, the defendant stayed at the mission thirty nights.

At trial, only some of the travel vouchers for the reimbursements at issue were introduced into evidence. Christopher Boyd, a staff accountant at the hospital, testified that while he could not find all of the travel vouchers, the defendant would have submitted a voucher for each travel reimbursement documented in their computer system. After submitting the voucher, the defendant would have been paid cash.

None of the witnesses called to testify at trial were able to identify the defendant in the court room. However, the parties entered a stipulation into evidence containing the defendant's date of birth and social security number. The V.A. hospital had the same social security number on the travel vouchers submitted by the defendant and its records of reimbursements paid to the defendant.

After presenting the above-summarized evidence at trial, the State rested. After moving for acquittal, which the trial court denied, the defendant rested without presenting proof. The jury subsequently found the defendant guilty of theft of property valued at $1000 or more but less than $10,000. Following a sentencing hearing, the trial court sentenced the defendant to eleven years in confinement. The defendant moved then moved for a new trial. The trial court denied the motion, and this timely appeal followed.

On appeal, the defendant argues that the proof only supported a conviction of misdemeanor theft, not felony theft of property worth over $1000. According to the defendant, the travel voucher dated December 29, 2010, for $86.32, is the only voucher that listed the 202 Jackson Street address. As a result, the defendant argues the State only proved that he unlawfully received a payment of $86.32. The State argues the evidence it presented at trial was sufficient to support the guilty verdict. We agree with the State.

**Analysis**

*Sufficiency of Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must

evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). "Owner" is "a person, other than the defendant, who has possession of or any interest ... in property ... and without whose consent the defendant has no authority to exert control over the property." Tenn. Code Ann. § 39–11–106(a)(26) (Supp. 2011). "Possession may be actual or constructive." *State v. Robinson,* 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001)). Actual possession "refers to physical control over an item." *State v. Fayne,* 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or through others.'" *Shaw,* 37 S.W.3d at 903 (quoting *State v. Patterson,* 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)).

In support of his argument that the evidence was insufficient to support his conviction of theft, the defendant asserts the State proved he did not live at the 202 Jackson Street address, but failed to prove that the defendant never lived at North Parkway Terrace, Apartment 21, in Tupelo. According to the defendant, the State only proved that he unlawfully received one travel reimbursement of $86.32 on December 29, 2010, so his conviction for theft of property valued at $1000 or more but less than $10,000 should be reduced to theft of property of $500 or less, a Class A misdemeanor. After reviewing the evidence in a light most favorable to the State, we disagree.

At trial, both Ms. Alcore and Officer Hobson testified that the defendant was asked to bring documentation of his Tupelo address and failed to do so. Then, not only did Mr. Shells confirm that the defendant never lived at the 202 Jackson Street address, but Mr. Patrick from the Memphis Union Mission testified that during the time period at issue, the defendant was a frequent visitor of the mission. The defendant's dormitory records from the mission were introduced into evidence and showed that he checked in at least thirty times while claiming to live in Tupelo. A comparison of the mission records to the V.A. hospital's itemized list of travel reimbursements paid to the defendant shows

that on at least nineteen occasions the defendant received reimbursement for travel between Tupelo and Memphis on the same date the mission lists him as a resident in their dormitories. Despite the absence of a complete set of travel vouchers, the State introduced the V.A. hospital's records of travel reimbursements paid to the defendant. The records showed payments totaling $5,875.72, and two witnesses testified the defendant would have received these payments in cash.

The jury, by finding the defendant guilty of theft of property valued at $1000 or more but less than $10,000, accepted this evidence as true. This Court is not to reweigh the evidence or substitute its inferences for those drawn by the trier of fact. While not overwhelming, when viewing the overall proof in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The defendant is not entitled to relief on this issue. We affirm the judgment of the trial court.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE