# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 4, 2012 Session

## STATE OF TENNESSEE v. BOBBY LEE ROBINSON ET AL.

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2007B968      Monte Watkins, Judge**

---

**No. M2009-02450-SC-R11-CD - Filed April 19, 2013**

---

Police utilized a confidential informant to arrange a drug buy from a co-defendant. At the scheduled time and location, the co-defendant arrived in his truck with the defendant and another passenger. A police takedown resulted in the arrest of the three men. A consensual search of the truck yielded approximately 153 grams of cocaine and 8.6 grams of marijuana in close proximity to where the defendant had been seated. A subsequent consensual search of the co-defendant's residence, located several miles away, yielded an additional 293.5 grams of cocaine and various items of drug paraphernalia. The State consolidated the weight of the cocaine and charged the defendant with possession with intent to sell 300 grams or more of cocaine, a Class A felony; possession of marijuana; and possession of drug paraphernalia. The jury convicted the defendant of possession with intent to sell 300 grams or more of cocaine and possession of drug paraphernalia. We hold that although the evidence was sufficient to support a finding that the defendant constructively possessed the cocaine in the co-defendant's truck, the evidence was insufficient to support a finding that he constructively possessed either the cocaine or the drug paraphernalia in the co-defendant's residence. Accordingly, we reduce the conviction for possession with intent to sell 300 grams or more of cocaine to possession with intent to sell 26 to 299 grams of cocaine, a Class B felony, and we vacate the conviction for possession of drug paraphernalia. The case is remanded to the trial court for re-sentencing on the reduced offense.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

L. Willis Jones, Nashville, Tennessee, for the appellant, Bobby Lee Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Leslie E. Price, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

In April 2007, a Davidson County grand jury indicted the defendant, Bobby Lee Robinson, on possession with intent to sell 300 grams or more of a substance containing cocaine, possession of marijuana, and possession of drug paraphernalia. See Tenn. Code Ann. §§ 39-17-417 to 39-17-418, 39-17-425 (2006). The indictment resulted from contraband discovered after a police "takedown" of Mr. Robinson and his co-defendants, Jamie Grimes and Anthony Collier.[1] A jury trial was held from July 20 through July 23, 2009.

At trial, Detective Justin Fox of the Metropolitan Nashville Police Department testified on behalf of the State. He explained that a confidential informant with whom he had worked in the past approached him and indicated she could purchase cocaine from a man named Jamie Grimes. Under the supervision of Detective Fox, the informant contacted Mr. Grimes to arrange a drug buy. Five successive telephone conversations between the confidential informant and Mr. Grimes about the details of the scheduled buy were recorded. During the first recorded telephone conversation, Mr. Grimes told the informant that he would call her back in about twenty minutes. Detective Fox identified Mr. Robinson's voice in the background of the recording, but Mr. Robinson's statements were unintelligible. In a second recorded telephone conversation initiated by the confidential informant, Mr. Grimes instructed the informant to meet him at a Ruby Tuesday restaurant in Donelson, Tennessee, to complete the drug buy.

Once the drug buy location was established, Detective Fox directed Detective Curtis Watkins to set up surveillance of Mr. Grimes' residence. Detective Watkins positioned his vehicle across the street from the residence, where he eventually observed Mr. Grimes, Mr. Robinson, and Mr. Collier exit the residence and enter Mr. Grimes' truck. Mr. Grimes sat in the driver's seat, Mr. Robinson sat in the front passenger seat, and Mr. Collier sat in the right rear passenger seat. Detective Watkins did not see the men carrying anything as they left Mr. Grimes' residence. He could not recall how long he had been conducting surveillance before the men exited the house and left in Mr. Grimes' truck. Detective Watkins followed Mr. Grimes' vehicle for a short distance but was instructed to return to the residence.

---

[1] Mr. Grimes and Mr. Collier are not parties to this appeal.

The confidential informant placed the third and fourth recorded telephone calls to keep Mr. Grimes informed of her location and to inquire into Mr. Grimes' location. In the final recorded telephone conversation, the confidential informant informed Mr. Grimes she had arrived at the Ruby Tuesday restaurant, and Mr. Grimes changed the location to a nearby Backyard Burger restaurant. The three men arrived at the Backyard Burger restaurant and circled the parking lot. When a "takedown" signal was given by police, Mr. Grimes attempted to drive away, but his truck struck another vehicle in the Backyard Burger parking lot. Officer Johnnie Melzoni testified that he saw Mr. Robinson throw a bag that appeared to contain a white, rock-like substance into the back seat of the truck. All three men were arrested.

During a pat-down of the men, police found a bag containing a white, rock-like substance in the groin area of Mr. Collier's pants. Police found nothing on Mr. Robinson's person. Mr. Grimes consented to a search of his truck. During the search, police found a blue bag in the middle of the front floorboard between the driver side and the seat Mr. Robinson had occupied. The blue bag contained two small bags, one containing 101.3 grams of crack cocaine and another containing 51.2 grams of powder cocaine. Police found a small bag containing approximately one gram of crack cocaine on the back floorboard. Detective Fox estimated the street value of the cocaine found in Mr. Grimes' truck to exceed $6000. Police also found 8.6 grams of marijuana in the center console.

Detective Fox testified that while the truck was being searched, he placed Mr. Robinson and Mr. Collier in the back seat of his patrol car along with a recording device. Mr. Robinson and Mr. Collier were recorded using various slang terms prevalent in the drug trade. Although much of the recording is unintelligible, Mr. Robinson can be heard telling Mr. Collier that the police tried to convince him to work with them but that he was no "rat." Mr. Robinson also stated, "They know I'm the one . . . I got the plug," and he later commented that he would have to get his "bird man." Detective Fox explained that a "plug" is the person responsible for obtaining the drugs, a "bird" is a kilogram, and a "birdman" is someone who has the ability to procure a kilogram of cocaine.

Mr. Grimes also consented to a search of his residence. During the search, police found a bag containing 11.4 grams of crack cocaine on the refrigerator in the kitchen and a large plastic bag containing three more plastic bags of cocaine with a combined weight of 282.1 grams in a clothing hamper in the living room. Police also found various items of drug paraphernalia in the kitchen, including digital scales, which were in plain view; a pipe with residue in a kitchen drawer; and various other items with white residue in either a kitchen drawer or a kitchen cabinet. Police also found a black pan, a measuring cup, and a knife in the sink. Detective Fox explained that these items are consistent with those used in cooking crack cocaine. Detective Fox acknowledged that because no fingerprints were lifted from the items, there was no evidence that Mr. Robinson had touched any of the items. Although

mail and other personal items were seized from the residence, nothing connected Mr. Robinson to the residence other than Detective Watkins' observance of Mr. Robinson leaving the location with Mr. Grimes and Mr. Collier on the day of the scheduled drug buy.

The jury convicted Mr. Robinson of possession with intent to sell 300 grams or more of a substance containing cocaine, a Class A felony, and possession of drug paraphernalia. The trial court sentenced Mr. Robinson to seventeen years for possession with intent to sell cocaine to be served concurrently with a sentence of eleven months and twenty-nine days for possession of drug paraphernalia. Mr. Robinson appealed his conviction to the Court of Criminal Appeals, which affirmed the judgment of the trial court. State v. Bobby Lee Robinson, No. M2009-02450-CCA-R3-CD, 2011 WL 6747480, at *15 (Tenn. Crim. App. Dec. 22, 2011). We granted Mr. Robinson permission to appeal.

**Analysis**

Mr. Robinson maintains the evidence was insufficient to support the jury's finding that he actually or constructively possessed the contraband in question. He asserts that his "mere association" with Mr. Grimes and his "mere presence" in Mr. Grimes' truck and at Mr. Grimes' residence were not adequate proof that he participated in the arranged drug buy between the confidential informant and Mr. Grimes or possessed any of the drugs and paraphernalia found in Mr. Grimes' residence.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004). This standard applies whether the finding of guilt is based on direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010) (citing State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn from the evidence by the trier of fact. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). The trial judge and jury have the benefit of hearing witness testimony and observing witness demeanor. Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523, 527 (1963)). Therefore we give deference to the determinations made by the trier of fact regarding witness credibility, factual findings, and the weight or value given to the evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a jury renders a guilty verdict that is approved by the trial court, all conflicts are resolved in favor of the State, and we accredit the testimony of the State's

witnesses. Cabbage, 571 S.W.2d at 835 (quoting State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)).

This Court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable inferences that may be drawn from the evidence. Jackson, 443 U.S. at 319; Goodwin, 143 S.W.3d at 775 (quoting State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

At issue in this case are whether Mr. Robinson knowingly possessed cocaine with intent to resell it and whether he possessed drug paraphernalia with intent to use it for drug manufacture or use. See Tenn. Code Ann. §§ 39-17-417, -425. Possession may be actual or constructive. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). If possession is deemed to be constructive, there must be proof that the accused had "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). The mere presence of an individual in an area where drugs are found is not sufficient, standing alone, to find constructive possession. State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Similarly, an individual's mere association with a person in control of the drugs or the property where the drugs are located is not enough to support a finding of knowing possession. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

Constructive possession depends on the totality of the circumstances in each case. It may be proven by circumstantial evidence. Tenn. Code Ann. § 39-17-419 (2006) (stating that possession may be inferred from "relevant facts surrounding the arrest"). Circumstantial evidence is sufficient to sustain a defendant's conviction even if the evidence does not "remove every reasonable hypothesis except that of guilt." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011) (quoting United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006)). The evidence presented, however, must be sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Cooper, 736 S.W.2d at 129.

In this case, the contraband in question was found at two separate locations, in Mr. Grimes' truck and in Mr. Grimes' residence. We first examine the evidence supporting Mr. Robinson's conviction of possession of the contraband in Mr. Grimes' truck. At trial, Detective Fox testified that the cocaine found inside the truck was within arm's reach of where Mr. Robinson had been seated. Officer Melzoni testified that he observed Mr. Robinson throw a small portion of the cocaine into the back seat of Mr. Grimes' truck at the time of the takedown. Mr. Robinson also made statements to Mr. Collier in the rear seat of

Detective Fox's patrol car from which a jury could infer that Mr. Robinson had general knowledge of the drug trade. The aggregate weight of the drugs found in Mr. Grimes' truck was under 300 grams and thus was sufficient to support a conviction for a Class B felony. See Tenn. Code Ann. § 39-17-417(i)(5) (classifying possession of 26 to 299 grams as a Class B felony). Taken together, these facts are sufficient to support a finding of Mr. Robinson's constructive possession of the cocaine in Mr. Grimes' truck. See Shaw, 37 S.W.3d at 903 (finding the evidence sufficient to support constructive possession when a bottle containing cocaine was found on the front seat of a car that was driven by the defendant). We conclude that the evidence was sufficient to sustain Mr. Robinson's conviction for possession with intent to sell the cocaine found in Mr. Grimes' truck.

The State combined the weight of the cocaine found in Mr. Grimes' truck with the weight of the cocaine found in Mr. Grimes' residence to charge Mr. Robinson with possession with intent to sell 300 grams or more of cocaine, a Class A felony. See Tenn. Code Ann. § 39-17-417(j)(5). Although we agree the evidence was sufficient to support a finding of Mr. Robinson's constructive possession of the cocaine recovered in Mr. Grimes' truck, a Class B felony, the question of whether Mr. Robinson constructively possessed the contraband found in Mr. Grimes' residence is a much closer one.

We find it instructive to examine the case law of other jurisdictions that have considered whether a defendant's contact with a residence where drugs are discovered is sufficient to find constructive possession. In United States v. Scofield, the Eighth Circuit determined that the defendant was a frequent visitor to the co-defendant's residence, where the drugs were discovered, and the defendant had been present during previous drug transactions. Scofield, 433 F.3d 580, 586 (8th Cir. 2006). The court held, however, that the evidence was insufficient to sustain a conviction for possession because there was no evidence linking the defendant to the drugs found or even establishing that the defendant was aware of the location of the drugs. Id. Similarly, in Nicholas v. State, the Florida District Court of Appeal noted that the defendant had admitted that he had previously cooked and sold cocaine and that other testimony established that the defendant had access to the apartment where the drugs were found. Nicholas, 47 So. 3d 297, 300-01 (Fla. Dist. Ct. App. 2010). Nonetheless, the court held the evidence insufficient to prove constructive possession because the defendant was not present when the cocaine was found, he did not lease the apartment, and his fingerprints were not found on the cocaine or on any other evidence in the apartment. Id.

The Massachusetts Appeals Court held the evidence was insufficient to show constructive possession when the defendant did not reside in, rent, or exercise control over the apartment and was not present at the time the drugs were found. Commonwealth v. Humphries, 926 N.E.2d 215, 217 (Mass. App. Ct. 2010). In Humphries, the only evidence linking the defendant to the apartment was an identification card bearing his name and a

piece of mail addressed to him. Id. Both items were found in the apartment but listed an address for the defendant that differed from that of the apartment. Id. In Naylor v. State, 97-KA-00686-SCT (¶ 32), 730 So. 2d 561, 566 (Miss. 1998), the Mississippi Supreme Court held that the evidence was insufficient to prove constructive possession. Although the defendant was in close proximity to the location of the cocaine and police had found his wallet in the closet of the residence, there was no proof he lived at the residence where the cocaine was found. Id. The New York Supreme Court, Appellate Division, similarly held that the evidence was insufficient to prove constructive possession, despite the defendant's presence in the hallway outside the apartment at the time of the seizure, when the defendant did not reside in, occupy, or rent the apartment where the drugs were found. People v. Alicea, 806 N.Y.S.2d 645, 645-46 (N.Y. App. Div. 2005).

The State concedes it presented no physical evidence linking Mr. Robinson to Mr. Grimes' residence. The State maintains, however, that it presented sufficient evidence from which a rational juror could infer that Mr. Robinson constructively possessed the contraband recovered from the Grimes residence. Detective Fox testified that he recognized Mr. Robinson's voice in the background during the first recorded telephone conversation between Mr. Grimes and the confidential informant. Detective Watkins testified that he observed Mr. Robinson leaving Mr. Grimes' residence accompanied by Mr. Grimes and Mr. Collier prior to the takedown at the Backyard Burger. The State also introduced the recorded comments made in the rear seat of Detective Fox's patrol car, in which Mr. Robinson discussed his response to police attempts to solicit his cooperation in arranging another drug deal.

We must determine whether the trier of fact could reasonably infer from this evidence that Mr. Robinson had control over the cocaine and drug paraphernalia in the Grimes residence. See Cooper, 736 S.W.2d at 128-29. At the time of the first recorded conversation during which Detective Fox recognized Mr. Robinson's voice, Detective Watkins had not begun his surveillance of the residence. Although Detective Watkins witnessed Mr. Robinson exiting the residence, no testimony was presented as to how long Mr. Robinson had been inside the residence or what activity had occurred within the residence. Detective Watkins could not recall how long he had been observing the residence when he saw the three men exit and leave in Mr. Grimes' truck. Detective Watkins testified, however, that none of the three men carried anything when they left the residence.

Detective Fox testified that a set of digital scales was found in plain view on the kitchen counter when he searched the residence and that he could see the cocaine on top of the refrigerator when he was standing in the kitchen. The other items of drug paraphernalia, however, were found inside a kitchen cabinet or a kitchen drawer. There were also no fingerprints lifted from any of the contraband items to show that Mr. Robinson had handled either the drug paraphernalia or cocaine. Although Mr. Robinson's conversation with Mr. Collier in the rear seat of the patrol car shows he had knowledge of the drug trade, nothing

in their conversation specifically referenced Mr. Grimes' residence or the cocaine found during the search.

At best, the State's evidence shows Mr. Robinson may have had some connection to the Grimes residence. Mr. Robinson's voice was identified in the background during Mr. Grimes' conversation with the confidential informant establishing the drug buy. Mr. Robinson was also seen leaving the residence with Mr. Collier and Mr. Grimes prior to the takedown at the Backyard Burger restaurant. The State also presented testimony that some of the cocaine and several items of drug paraphernalia were found in plain view when the police searched the residence. From these facts, a jury could have reasonably inferred that Mr. Robinson had knowledge of some of the contraband in Mr. Grimes' residence. The State's evidence falls short, however, of creating a reasonable inference that Mr. Robinson had "the power and intention . . . to exercise dominion and control over" the contraband found in the residence. Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Accrediting the State's witnesses and affording the State the strongest legitimate view of the evidence, we hold that there is insufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that Mr. Robinson was in constructive possession of the cocaine or paraphernalia found in Mr. Grimes' residence.

**Conclusion**

The evidence was sufficient to support a finding beyond a reasonable doubt that Mr. Robinson was in constructive possession of the cocaine found in Mr. Grimes' truck. We conclude, however, that the evidence was insufficient to support a finding beyond a reasonable doubt that Mr. Robinson constructively possessed the cocaine or drug paraphernalia found in Mr. Grimes' residence. We reduce Mr. Robinson's conviction for possession with intent to sell 300 grams or more of cocaine to possession with intent to sell between 26 and 299 grams of cocaine, and we vacate Mr. Robinson's conviction for possession of drug paraphernalia. The case is remanded to the trial court for resentencing on the reduced offense. Costs of this appeal are taxed to the State of Tennessee.

_____
JANICE M. HOLDER, JUSTICE