IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 23, 2020 Session

**STATE OF TENNESSEE v. REVADA WRIGHT**

**Appeal from the Criminal Court for Bradley County**
**No. 13-CR-300B     Sandra Donaghy, Judge**

**No. E2018-01778-CCA-R3-CD**

The Defendant, Revada Wright, was convicted by a Bradley County Criminal Court jury of speeding, a Class C misdemeanor, and possession with the intent to sell or deliver more than 0.5 gram of cocaine, a Class B felony. *See* T.C.A. §§ 39-17-417 (Supp. 2012) (subsequently amended) (possession of cocaine); 55-8-152 (2017) (speeding). He received a sentence of twelve years. On appeal, the Defendant contends that the trial court erred by denying his motion for a judgment of acquittal because there is insufficient evidence to support his drug conviction. We reverse the judgment for possession with the intent to sell or deliver more than 0.5 gram of cocaine, vacate the Defendant's conviction, and dismiss the charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Conviction Vacated; Charged Dismissed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Robert W. White (on appeal), Maryville, Tennessee, and Paula Henderson (at trial), Cleveland, Tennessee, for the appellant, Revada Wright.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Dallas Scott III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the trial of the Defendant and his codefendant, Eric Walker, Bradley County Sheriff's Department Detective Chad Ownby testified that in June 2013 he worked "criminal interdiction" on Interstate 75 (I-75). He explained his job was to intercept criminal activity that occurred on the interstate, including the transportation of drugs.

Detective Ownby stated that he received interdiction training to detect illegal activity on the interstate. He explained that the training taught him specific indicators to detect criminal activity such as multiple air fresheners, passengers attempting to hide, out of state license plates, and a driver's reactions. Detective Ownby said that he looked for a "source city" of drugs, such as Atlanta. He stated that on June 6, 2013, he sat in his vehicle at mile marker 23 on I-75, and his radar indicated that the Defendant's vehicle was speeding at seventy-seven miles per hour in a seventy-mile-per-hour zone. Detective Ownby stated that he drove onto the interstate and turned on his vehicle's blue lights when he caught up with the Defendant's car, which was approximately at the 26.5 mile marker. Detective Owby said that the Defendant pulled over after he drove past an exit ramp between mile markers 26 and 27. Detective Ownby stated that speeding was the only indicator of illegal activity he observed as the Defendant initially drove past him. Detective Ownby said he was not positive, but he thought the Defendant's car had an Atlanta license plate. Detective Ownby stated that the Defendant could have pulled over on the exit ramp safely, but he drove past the exit before stopping his car. Detective Ownby said that this indicated the Defendant and the passenger, the codefendant, were possibly hiding something.

Detective Ownby testified that after the Defendant stopped his car, Detective Ownby walked to the front passenger-side window. He said that the codefendant rolled down the window and that the Defendant handed Detective Ownby his identification. Detective Ownby said that it was difficult to hear the Defendant because of interstate traffic noise, and he asked the Defendant to walk to the back of the car. Detective Ownby explained that the Defendant voluntarily got out of the car and spoke with Detective Ownby at the rear of the car. Detective Ownby said that the Defendant handed him a Georgia driver's license and told Detective Ownby that he was driving from Atlanta to Maryland or Maryville. Detective Ownby stated that he was unsure if the Defendant said Maryland or Maryville. Detective Ownby explained that the Defendant said he was traveling to pick up his sister and take her to an airport. Detective Ownby stated that the Defendant told him he rented the car and that he only knew the codefendant by his nickname. Detective Ownby walked back to the passenger side of the car to retrieve the rental agreement from the car. He said that the codefendant retrieved the rental agreement from the glove compartment and handed it and his identification to Detective Ownby. Detective Ownby said the codefendant did not know where they were going, just that the Defendant had asked the codefendant to accompany him on the trip. Detective Ownby said that the codefendant's hand shook as he handed his driver's license to Detective Ownby, that the codefendant did not make eye contact, and that he appeared to be nervous. Detective Ownby explained that, based on his training, "everything" added together made him "feel like there was some type of criminal activity going on."

Detective Ownby testified that he asked the codefendant to exit the car. He said that as the codefendant got out of the car, the codefendant pulled at the front of his shirt, and Detective Ownby saw a "bulge" in the front of the codefendant's waistband. He said that he believed the codefendant might be holding a gun, and that, as a result, he asked the

codefendant if he could pat him down to check for weapons. Detective Ownby said that the codefendant agreed, but as Detective Ownby attempted to put his hand on the codefendant's waist, the codefendant attempted to strike Detective Ownby with an elbow and attempted to run away. Detective Ownby said that he grabbed the codefendant and held him on the ground. He said the codefendant repeatedly reached for his waistband. Detective Ownby explained that Agent Clay Moore, who arrived in a different car, assisted with placing handcuffs on the codefendant. Detective Ownby stated that he retrieved a green plastic bag from the codefendant's waistband, which contained what appeared to be approximately one ounce of cocaine.

Detective Ownby testified that he arrested the codefendant and searched the car. He said that the only items in the car were a few cell phones and a couple of drinks. He said there was no luggage or any other items that indicated the Defendant and the codefendant were going on a trip. Detective Ownby explained that another officer searched the codefendant and found a small bag of marijuana and a marijuana "blunt" in the codefendant's shoe. Detective Ownby stated that it was his experience that people rented cars for transporting drugs to prevent their own cars from being seized.

Detective Ownby testified that his police car had a video camera. He said that there was a video recording of the incident with the Defendant but that the audio malfunctioned on the first half of the recording. Detective Ownby identified a disc containing the video recording, and it was played for the jury. The video depicts the detective's car flashing its blue lights and the Defendant's car pulling over. The Defendant stops his car, and two officers approach the passenger-side window. The Defendant exits the car, and he has a discussion with the detective near the front of the police car. Detective Ownby returns to the passenger-side window and speaks to the codefendant. As the codefendant gets out of the car, he tries to run. The Defendant does nothing when the codefendant attempts to flee. The recording does not show Detective Ownby stopping the codefendant, but shortly after the codefendant attempts to run, an officer places a bag containing white powder and a shoe containing a small amount of plant material on the hood of the detective's car. Officers place the Defendant under arrest and search the Defendant's car.

Tennessee Bureau of Investigation Special Agent Mollie Stanfill testified as an expert in forensic chemistry that she tested the substances seized in this case. She stated that the white powder was 28.02 grams of cocaine and that the plant material was 1.53 grams of marijuana. She said that no DNA testing or fingerprint analysis was conducted because it was not requested.

The Defendant and the codefendant did not present evidence.

Upon this evidence, the jury convicted the Defendant of speeding and possession with the intent to sell or deliver more than 0.5 gram of cocaine. This appeal followed.

The Defendant contends that the trial court erred by denying his motion for a judgment of acquittal because insufficient evidence supports his conviction for possession with the intent to sell or deliver more than 0.5 gram of cocaine. Specifically, he argues that there is no evidence showing the Defendant constructively possessed the cocaine located under the codefendant's clothing. The Defendant does not challenge the sufficiency of the evidence of his speeding conviction. The State responds that the evidence is sufficient to support the Defendant's conviction.

The standard of review for a trial court's denial of a motion for a judgment of acquittal is the "same standard that applies on appeal in determining the sufficiency of the evidence[.]" *State v. Little,* 402 S.W.3d 202, 211 (Tenn. 2013). In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see State v. Vasques,* 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques,* 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given to the evidence . . . are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall,* 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton,* 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-417(a) provides that it "is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." Cocaine is a Schedule II controlled substance. *Id.* § 39-17-408(b)(4) (Supp. 2012) (subsequently amended). Possession may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession requires a showing that a defendant had "the power and intention at a given time to exercise dominion and control over . . . [the item] either directly or through others." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (internal quotations and citation omitted). "'In essence, constructive possession is the ability to reduce an object to actual possession.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 445 F.2d 495, 498 (5th Cir. 1979)). "Constructive possession depends on the totality of the circumstances in each case" and "may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing T.C.A. § 39-17-419 (2006)). Moreover, one's "mere presence in an area where drugs are discovered, or

-4-

one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." *Shaw*, 37 S.W.3d at 903.

Viewed in the light most favorable to the State, the evidence is insufficient to support the Defendant's conviction for possession with the intent to sell or deliver more than 0.5 gram of cocaine. The evidence established that the Defendant was observed speeding while driving a rental car on I-75 in Bradley County. Detective Ownby was parked at mile marker 23, turned on his car's blue lights, and drove to catch up with the Defendant, who passed an interstate exit and stopped the car shortly after mile marker 27. The Defendant voluntarily got out of his car and cooperated with the detective for the duration of the incident. The Defendant told Detective Ownby that he was traveling to either Maryville or Maryland to take the Defendant's sister to an airport. The Defendant was accompanied by the codefendant, whom the Defendant said he knew only by a nickname. The codefendant said that he did not know where they were going. The vehicle contained no luggage or personal items other than drinks and cell phones. Detective Ownby observed that the codefendant was nervous and avoided eye contact, and Detective Ownby saw the codefendant pull his shirt over a bulge tucked into his front waistband as the codefendant stepped out of the car. As Detective Ownby started to pat the codefendant for weapons, the codefendant attempted to strike Detective Ownby and flee. Detective Ownby detained the codefendant and discovered a bag containing cocaine in his waistband and a small amount of marijuana in his shoe.

The State relied on the Defendant's driving a rental car, traveling from Atlanta, lack of luggage in the car, knowing the codefendant only by his nickname, and taking too long to pull over his car as evidence that the Defendant constructively possessed cocaine found on the codefendant. The cocaine was not in plain view, and the evidence does not show that the Defendant had knowledge of the cocaine hidden in the codefendant's waistband. The Defendant made no incriminating statements, did not appear nervous or evasive, and did nothing when the codefendant attempted to flee. No fingerprint or DNA analysis was done on the bag of cocaine, nor was there an analysis completed on the cell phones found in the rental car. No drug paraphernalia was found in the rental car. There was no evidence regarding the relationship between the Defendant and the codefendant. Moreover, there is no evidence that the Defendant's sister was contacted by police, and no evidence contradicts the Defendant's assertion that he was traveling to pick up his sister and take her to an airport. None of the evidence directly connects the Defendant with the cocaine and creates an inference that the Defendant had the knowledge and ability to exercise dominion and control over the cocaine. Viewed in the light most favorable to the State, the evidence does not support the jury's finding beyond a reasonable doubt that the Defendant was guilty of possession of cocaine with the intent to sell or deliver. We conclude that the evidence is insufficient to support the Defendant's conviction.

Based upon the foregoing and the record as a whole, we reverse the judgment for possession with the intent to sell or deliver more than 0.5 gram of cocaine, vacate the Defendant's conviction, and dismiss the charge.


_____
ROBERT H. MONTGOMERY, JR., JUDGE