**FILED**
12/05/2022
Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE

Assigned on Briefs November 16, 2022

## STATE OF TENNESSEE v. STERLING WHITE

### Appeal from the Criminal Court for Knox County
### No. 113742   Steven Wayne Sword, Judge

---

### No. E2022-00279-CCA-R3-CD

---

The Defendant, Sterling White, was convicted by a Knox County Criminal Court jury of two counts of unlawful possession of a firearm, a Class B felony; unlawful possession of a handgun, a Class E felony; and simple possession of cocaine, a Class A misdemeanor. After merging the unlawful possession of a handgun/firearm counts into a single conviction of unlawful possession of a firearm having been previously convicted of a crime involving violence, the trial court sentenced the Defendant as a Range II, multiple offender to concurrent terms of twelve years for the firearm conviction and eleven months, twenty-nine days for the cocaine conviction, for a total effective sentence of twelve years in the Department of Correction, to be served consecutively to the Defendant's sentence in a case for which the Defendant was on bond at the time of the instant offenses. The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his convictions. Based on our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., P.J., and TIMOTHY L. EASTER, J., joined.

J. Liddell Kirk, Madisonville, Tennessee (on appeal) and Andrew Pate, Knoxville, Tennessee (at trial), for the appellant, Sterling White.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Larry Dillon and Takisha Fitzgerald Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On March 30, 2017, officers of the Knoxville Police Department ("KPD") responded to a report of shots fired at a Knoxville apartment complex. The first officer on the scene saw the Defendant, who matched the description of the shooting suspect, standing outside an apartment building. The officer activated the blue lights on his unmarked vehicle, exited the vehicle, approached the Defendant, and asked him to turn around for the officer to frisk him. When the officer touched him, the Defendant ran, flinging objects from his person as he fled. He was quickly captured. Officers retrieved several items from the ground along the Defendant's flight path, including 1.62 grams of marijuana, 1.68 grams of crack cocaine, a Hydrocodone tablet, and Buprenorphrine, also known as Suboxone. After the Defendant had been handcuffed and placed in the back seat of a marked patrol vehicle, an officer granted his request to exit the vehicle to smoke a cigarette. As the Defendant exited the vehicle, the officer saw a loaded .25 semi-automatic pistol lying on the seat where the Defendant had been sitting.

The Defendant was subsequently charged in a multi-count indictment with evading arrest, three counts of unlawful possession of a firearm/handgun, two counts of possession with the intent to go armed during the commission of a dangerous felony, possession with the intent to sell or deliver more than one-half ounce of cocaine, possession of Hydrocodone, possession of Buprenorphine, and possession of marijuana. He was also charged in association with four of the counts with violations of the criminal gang enhancement statute.

At trial, KPD Sergeant Adam Minner testified that at 12:55 p.m. on March 30, 2017, a call came over the radio of an individual shooting a firearm at an apartment complex known as "The Bricks." By the time he arrived, Investigator Ogle and Officer Crump were already on the scene. Because he was the only officer in a marked patrol vehicle, he was tasked with the inventory of evidence and with the Defendant's arrest.

Sergeant Minner testified that another officer handcuffed the Defendant and walked him to Sergeant Minner's vehicle, where the Defendant was placed in the back seat. He stated that it was standard police procedure to pat someone down for weapons before placing him in handcuffs, and that he could only speculate as to whether that was done in the Defendant's case. Regardless, when he allowed the friendly and cooperative Defendant to exit the vehicle to smoke a cigarette, he saw a handgun lying on the back seat where the Defendant had been sitting. Sergeant Minner identified the property inventory report he had prepared of items collected in the case, as well as the actual narcotics items that he had inventoried. He also identified the .25 caliber semi-automatic pistol and magazine with two bullets, which he recovered from the back seat of his patrol vehicle. He testified that, per his standard protocol, he had searched his vehicle at the beginning of his shift to ensure

- 2 -

that nothing was in the back seat. He said he had not transported anyone that day before the Defendant's arrest. He described the back seat as one continuous plastic unit from floorboard to seat and expressed his absolute certainty that it was empty before the Defendant was placed in the vehicle. He identified portions of the audio recording of his conversation with the Defendant, which were published to the jury and admitted as a trial exhibit. During those clips, the Defendant admitted that he had possession of the gun and said that he thought he had thrown it away.

On cross-examination, Sergeant Minner agreed that it was standard operating procedure to search an arrested individual and that the firearm should have been found during that search. He testified that the firearm was the only evidence that he personally collected at the scene. When asked if the Defendant said to him regarding the gun: "That mother f***** don't even work[,]" he responded that he was not sure if the word the Defendant used was "work" or "hurt." Sergeant Minner testified that he had no knowledge of whether the gun functioned. On redirect examination, Sergeant Minner confirmed that the magazine was in the gun when he retrieved the weapon from the back seat of his vehicle.

Tennessee Bureau of Investigation Special Agent Forensic Scientist Erica Stoner, an expert in the chemical analysis of controlled substances, identified the official forensic chemistry report prepared of the substances submitted for analysis in the case, which was admitted as an exhibit. Among other things, the report reflected that the first item was a rock-like substance that consisted of 1.68 grams of cocaine base.

KPD Investigator David Ogle testified that he was in the area inspecting a pawn shop when the call came over the radio of a man shooting a gun in front of The Bricks. When he pulled up to the apartment complex, he saw the Defendant, who matched the description of the shooting suspect. He activated his blue lights, got out of his vehicle, and walked up to the Defendant. He said he was wearing his badge, verbally identified himself as a police officer, and asked the Defendant to turn around so that he could check him for weapons. However, as soon as he began to pat the Defendant down, the Defendant "took off running." He repeatedly ordered the Defendant to stop as he chased him down an embankment beside the apartments. Other officers arrived at about the same time and joined in the chase. As the Defendant ran around a trailer, Investigator Ogle saw him "throwing things and dropping stuff[,]" including underneath the trailer. Investigator Ogle stated that Officer Crump passed him and captured the Defendant just inside the doorway of a building.

Investigator Ogle testified that after he and Officer Crump had handcuffed the Defendant and transferred him to Sergeant Minner, they retraced their steps and retrieved items that they had seen the Defendant discard during his flight, including a cell phone

cover and a pill bottle containing crack cocaine, which Officer Crump retrieved from underneath the trailer.

On cross-examination, Investigator Ogle testified that he made a mental note of where the Defendant tossed items but did not maintain a constant line of sight on the items. He stated that Officer Crump frisked the Defendant but did find anything. He agreed that The Bricks was in a high crime area with a lot of drug activity.

KPD Officer Robert Rose, who interviewed the Defendant at the police station on March 30, 2017, identified the Defendant's signed waiver of rights and the videotape of the interview, which were both published to the jury and admitted as exhibits. In the interview, the Defendant admitted that he had the gun in his back pocket but said he was only temporarily holding it for a girlfriend, who had gone down the street. The Defendant stated that he snorted cocaine and "just sold enough to get by." The Defendant told Officer Rose that he threw the drugs during his flight from police and thought he had thrown the gun as well. Officer Rose testified that the crack cocaine recovered was packaged in a manner consistent for resale and that crack cocaine is consumed in a different manner from powder cocaine.

On cross-examination, Officer Rose acknowledged that he told the Defendant during the interview that he had a good relationship with one of the prosecutors and would let her know that the Defendant had been cooperative.

As its final proof, the State introduced an agreed stipulation that on March 30, 2017, the Defendant was a convicted felon, having previously been convicted in two separate cases of a crime of violence and force.

The Defendant elected not to testify and rested his case without presenting any evidence. Following deliberations, the jury convicted him of the lesser included offense of possession of cocaine and the indicted offenses of unlawful possession of a firearm having previously been convicted of a felony involving the use of violence. The jury acquitted him of evading arrest, possession of marijuana, possession of Hydrocodone, and possession of Buprenorphrine. After a second phase of the trial in which the State presented evidence of the Defendant's 2011 Class E felony conviction for possession with the intent to sell cocaine, the jury found the Defendant guilty of unlawful possession of a handgun having previously been convicted of a felony drug offense. After a third phase of the trial, the jury found the Defendant qualified for enhanced punishment under the criminal gang enhancement statute for the three counts of unlawful possession of a firearm/handgun. The trial court, however, exercised its role as thirteenth juror to vacate the gang enhancement verdicts, finding the evidence insufficient to sustain those counts. The trial court merged the unlawful possession of a firearm/handgun convictions into a

- 4 -

single conviction for unlawful possession of a firearm and sentenced the Defendant as a Range II, multiple offender to an effective term of twelve years in the Department of Correction, to be served consecutively to his sentence in a case for which he was on bond at the time of the instant offenses. Following the denial of his motion for a new trial, the Defendant filed a timely notice of appeal to this court.

## ANALYSIS

The sole issue the Defendant raises on appeal is whether the evidence is sufficient to sustain his convictions. The Defendant acknowledges the incriminating statements he made about the gun and the crack cocaine but points out that neither item was found on his person and that Investigator Ogle admitted that he did not maintain a constant line of sight on the items the Defendant discarded during the foot chase. The Defendant concedes that the gun was found in the back seat of the police cruiser where he had been sitting, but asserts that he "was unable to effectively exercise control over a firearm at that time[,]" given the fact that he was handcuffed and in police custody. For the above reasons, the Defendant argues that there was insufficient proof of the possession element of either crime. The State points out that possession can either be constructive or actual, and argues that the evidence was more than sufficient to sustain the convictions. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 92-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Under Tennessee Code Annotated section 39-17-1307, "[a] person commits an offense who unlawfully possesses a firearm" and "[h]as been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving the use of a deadly weapon[.]" Tenn. Code Ann. §39-17-1307(b)(1)(A). A person commits the offense of simple possession when he knowingly possesses a controlled substance. Tenn. Code Ann. § 39-17-418. The possession element of a crime may be shown by either actual or constructive possession of an item:

> In criminal cases, a possession element may generally be established by showing actual or constructive possession. *See State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). While actual possession refers to physical control over an item, constructive possession requires only that a defendant have "'the power and intention. . . to exercise dominion and control over" the item allegedly possessed. *Id.* (quoting [*State v.*] *Shaw*, 37 S.W.3d [900,] 903 [(Tenn. 2001)].

*State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). "In essence, constructive possession is the ability to reduce an object to actual possession." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995).

Viewed in the light most favorable to the State, the evidence was sufficient to establish that the Defendant was in possession of both the cocaine and the firearm. In addition to the Defendant's own statements admitting his possession of both items, Investigator Ogle saw the Defendant flinging objects from his person during the foot chase and made a mental note of where the Defendant threw the items. Immediately after the Defendant's capture, Investigator Ogle and Officer Crump retraced the flight path and Officer Crump retrieved the pill bottle containing cocaine from underneath a trailer where Investigator Ogle had just watched the Defendant throw an item or items. As for the gun, Sergeant Minner testified that he searched the back seat of his patrol vehicle at the beginning of his shift, that the Defendant was the first person he transported that day, and that he was absolutely certain that the gun was not in the vehicle before the Defendant entered it. Based on this evidence, a rational jury could have reasonably concluded that the Defendant had the gun in his possession when he was placed in the back seat of the vehicle. Moreover, we agree with the State that the jury also could have reasonably

concluded that the Defendant, despite the handcuffs, had the ability to exercise control over the gun even after it fell from his pocket onto the vehicle seat. Thus, the proof was sufficient to establish the possession element of both offenses.

## CONCLUSION

Based on our review, we conclude that the evidence is sufficient to sustain the convictions. Accordingly, the judgments of the trial court are affirmed.

_____

JOHN W. CAMPBELL, SR., JUDGE
