IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 12, 2022

**STATE OF TENNESSEE v. CALVIN SANCHEZ AMOS**

**Appeal from the Circuit Court for Maury County**
**No. 27629     Stella L. Hargrove, Judge**

_____

**No. M2021-00986-CCA-R3-CD**

_____

Calvin Sanchez Amos, Defendant, was indicted for possession of .5 grams or more of cocaine with the intent to sell in a drug-free zone, possession of a firearm with the intent to go armed during the commission of a dangerous felony, and evading arrest. Defendant pled guilty to evading arrest and proceeded to trial on the remaining charges. A jury found Defendant guilty of the lesser included offenses of possession of .5 grams or more of cocaine for resale and attempted possession of a firearm during the commission of a dangerous felony. At the sentencing hearing, Defendant agreed to an effective sentence of 12 years. On appeal, Defendant challenges the sufficiency of the evidence and the trial court's ruling on the admissibility of a video from Defendant's phone in which he is seen cooking crack cocaine. After a full review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and JILL BARTEE AYERS, JJ., joined.

L. Samuel Patterson, Columbia, Tennessee, for the appellant, Calvin Sanchez Amos.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Jonathan Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

After a traffic stop in the early morning hours of April 20, 2019, Defendant was indicted for possession of .5 grams or more of cocaine in a drug-free school zone with intent to sell, possession of a weapon with the intent to go armed during the commission

of or attempt to commit a dangerous felony, and evading arrest. Defendant pled guilty to one count of evading arrest and not guilty to the remaining charges.

Officer Brandon Pace of the Columbia Police Department was on night shift patrol on April 20, 2019, at around 3:45 a.m. when he observed a gray Dodge Charger fail to come to a complete stop at the stop sign at the corner of White Street and Mapleash in Maury County. Officer Pace followed the vehicle and "initiated a traffic stop for the stop sign violation." He explained that "[t]he car pulled over on the side of the road" directly across the street from Agathos School and a "male g[o]t out of [the rear driver's] side, pull[ed] his pants up, and [took] off running in front of the vehicle." The man ran "through a field and ended up going out Tom J. towards Freedom Lane." Officer Pace later identified Defendant as the man who ran from the vehicle.

Rather than giving chase, Officer Pace approached the vehicle and asked the driver, Daisha Sparkman, to step out of the vehicle. Ms. Sparkman claimed that she did not know the identity of the man who ran from the car. The remaining rear seat passenger, Kevin Wilson, was also asked to get out of the vehicle. Mr. Wilson was sitting behind the passenger and also claimed ignorance as to the man's identity. Destiny Skelton, the front seat passenger, was also asked to exit the vehicle. She admitted that she was the owner of the vehicle and initially denied knowing the identity of the man who ran from the vehicle. Ms. Skelton later confirmed that she knew the man as "Sanchez." She denied that there was anything illegal in the vehicle and gave consent to search the vehicle.

During the search, Officer Rubert[1] recovered a .45 caliber handgun and a bag containing a "white, rocky substance" that field tested positive for cocaine. Both items were located in the rear driver's side floorboard where Defendant exited the vehicle. The items were also within "reaching distance" of Mr. Wilson. The gun was loaded with a round in the chamber. The drugs were packaged in one bag, a "corner bag tied up in a knot." The cocaine weighed 1.17 grams. Officer Pace testified that a typical user usually has possession of .2 grams or less of crack along with a pipe and buys "$20 worth or less at a time." The amount found in the car had an approximate street value of $120. A cell phone was found "in the seat on the same side" of the vehicle. Two other cell phones were found in the car, one belonging to the driver, and one belonging to the front seat passenger. The car was stopped 36 and a half feet from the school.

Four days later, on April 24, Officer Pace went to the home of Defendant's grandmother, Defendant's last known residence. Officer Pace spoke with Defendant's grandmother, who insisted Defendant was not present. As Officer Pace was returning to

---

[1] Officer Rubert is not identified by his first name in the record.

- 2 -

his patrol car, Defendant came outside. Defendant acknowledged that it was his phone found in the back seat of the vehicle on the night of the incident.

The State introduced the video from Defendant's phone. The trial court had already held a jury out hearing on the admissibility of evidence found on the cell phone. The hearing took place after the jury was sworn but prior to the introduction of any testimony. During the hearing, the trial court learned Defendant admitted that it was his cell phone, that a search warrant was procured, and that the phone was searched. According to the State, the phone contained "numerous videos and text messages and photographs of drug activity, gun activity, flashing large amounts of cash, statements by presumably [Defendant] in regards to the cash" as well as "numerous videos of individuals cooking crack cocaine as well as packaging individually packaged, cooked crack cocaine for resale to individuals using drugs."

The State sought to introduce two separate types of evidence found on the phone: a video clip showing crack cocaine cooking on a stove accompanied by two still shots from the video and some text messages sent by Defendant trying to set up a drug sale and purchase. The video did not actually show Defendant cooking crack cocaine, but the video showed crack cocaine cooking on a stove and then showed Defendant's face. No one else is present in the video. The video was taken two weeks prior to the incident for which Defendant was arrested and the text messages were dated within two months of the incident.

After hearing argument from both the State and counsel for Defendant, the trial court found that the probative value of the video outweighed the prejudicial effect but excluded the text messages, "unless [Defendant] opens the door."

The State introduced the video and still images found on Defendant's phone during the testimony of Officer Pace. He described the video which depicted "bags of cocaine sitting tied up on a stove" next to a pot of boiling water. The pot of water contained a jar sitting in the pot, in the same manner in which crack cocaine is produced. Defendant's face is partially visible in the short video clip. The first still image depicts the stove, pot, jar, and baggies filled with a white substance on the stovetop. The second still image depicts half of Defendant's face.

Defendant elected not to testify. Destiny Skelton testified for Defendant that she was 22 years of age and worked at Adient. She admitted that she was charged with possession of cocaine for resale in a drug-free zone and possession of a firearm during the commission of a dangerous felony but that the charges were "dropped." A charge for contributing to the delinquency of a minor was "retired." With respect to all other questions, Ms. Skelton invoked the Fifth Amendment.

Daisha Sparkman testified that she was 19 at the time of trial and 17 at the time of the incident. She admitted to being the driver of the vehicle on the night of the traffic stop and confirmed that Ms. Skelton, Mr. Wilson, and Defendant were the additional passengers in the car. She and Defendant were dating at the time. Ms. Sparkman was driving Ms. Skelton's car because Ms. Skelton "was drunk." They picked up Defendant and Mr. Wilson at "White Street" around 3:00 a.m. Mr. Wilson had a "black" gun. Ms. Sparkman "told him he shouldn't bring it" but Mr. Wilson ignored her plea. They drove off and headed to Ms. Sparkman's cousin's home, where the two women had visited earlier that evening. Ms. Sparkman denied seeing cocaine in the vehicle. Ms. Sparkman did not tell officers on the night of the incident about the gun because she was "scared."

At the conclusion of the proof, Defendant was found guilty of attempted possession of a firearm during the commission of a dangerous felony, a Class E felony, and possession of .5 grams or more of cocaine for resale, a Class B felony. The trial court approved the verdicts and set a sentencing hearing. The judgment forms reflect that the trial court imposed a sentence of 12 years for possession of cocaine with intent to sell, two years for attempted possession of a firearm during the commission of a dangerous felony, and 11 months and 29 days for evading arrest. The sentences were to run concurrently, for a total effective sentence of 12 years.

Defendant filed a motion for new trial, which the trial court denied "for the reasons stated in the record."[2] Defendant appealed, arguing that the evidence was insufficient to sustain the convictions for possession of .5 grams or more of cocaine for resale and attempted possession of a firearm during the commission of a dangerous felony and that the trial court erred by permitting the State to introduce the video and still images found on Defendant's phone.

*Analysis*

*Admissibility of Video and Still Images*

Defendant argues that the trial court erred by allowing the State to introduce the video and still images found on Defendant's phone under Tennessee Rule of Evidence 404(b). Specifically, Defendant claims it was "highly prejudicial" to permit the "improper character evidence" of him "allegedly cooking crack cocaine [while] being on trial for possession of crack cocaine" when the State's case was entirely circumstantial and based on constructive possession. The State argues that the introduction of the video was relevant to Defendant's identity because it showed him "producing the same illegal drug" and

---

[2] The record does not contain a transcript of the hearing on the motion for new trial.

"several bags of finished product" for which he was charged with possession with intent to sell. While the State acknowledges that the "prejudicial effect of the video is considerable," the State argues that it "does not outweigh the probative value of the evidence as it fairly establishes that [D]efendant was producing a quantity of crack cocaine far in excess of a user amount and packaged in several packages indicative of an intent to sell."

At the outset of our analysis, we point out that Defendant has failed to include the transcript from the motion for new trial hearing in the record on appeal. Pursuant to the Tennessee Rules of Appellate Procedure, specifically 24(b), the appellant has to ensure that the appellate record contains a fair, accurate, and complete account of what has occurred regarding the issues that are the bases of the appeal. *See* Tenn. R. App. P. 24(b). Defendant faces the risk of waiver of issues on appeal if an incomplete record is submitted to this Court. Here, the State did not argue that Defendant waived his issues on appeal by failing to include this transcript. The appellate record contains the transcript from the pretrial discussion on the admissibility of the evidence, the motion for new trial filed by Defendant, and the trial court's order denying the motion for new trial. Therefore, waiver notwithstanding, we will address Defendant's issue on the merits.

The threshold issue concerning the admissibility of evidence is relevance. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Even if evidence is deemed relevant, it may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Additionally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). However, "[e]vidence of other crimes, wrongs, or acts" may be admissible for "other purposes," such as proving identity, criminal intent, or rebuttal of accident or mistake. Tenn. R. Evid. 404(b); *State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005). Under Rule 404(b), the evidence must be excluded "if its probative value is outweighed by the danger of unfair prejudice." Tenn. R. Evid. 404(b)(4).

We must first determine whether the admissibility of the evidence should have been analyzed under Rule 403 or 404(b). "Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence." *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). On the other hand, most authorities suggest that trial courts take a "restrictive approach of 404(b) . . . because 'other act' evidence carries a significant potential for unfairly biasing a jury against the criminal accused." Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.04[8][e] (6th ed. LexisNexis Matthew Bender).

Traditionally, courts of this state have viewed any testimony of prior bad acts by a defendant as inadmissible when used as substantive evidence of guilt of the crime on trial. *State v. Parton*, 694 S.W.2d 299, 302-03 (Tenn. 1985). In those instances where the prior conduct or acts are similar to the crimes on trial, the potential for a prejudicial result increases. *State v. Bordis*, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995).

As set forth above, Rule 404(b) applies only to prior "bad acts," *State v. Clark*, 452 S.W.3d 268, 289 (Tenn. 2014), and testimony about behavior that is relevant and which does not constitute a crime or bad act is not analyzed under the Rule. *State v. Reid*, 213 S.W.3d 792, 814 (Tenn. 2006) (determining that possession of a gun, standing alone, does not constitute a crime and therefore evidence of ownership of a gun is not a bad act). If the behavior is indeed a bad act, we must then determine whether the trial court substantially complied with Rule 404(b)'s procedural requirements prior to admitting the evidence in order to determine the appropriate standard of review. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997) (applying abuse of discretion standard when trial court substantially complies with the procedural requirements of Rule 404(b)(1)-(4)).

Here, Defendant was charged with possession of .5 grams or more of cocaine with the intent to sell in a drug-free zone. To prove Defendant's guilt, the State needed to prove that Defendant knowingly possessed a controlled substance with intent to sell the controlled substance. T.C.A. § 39-17-417(a)(4). The trial court held a hearing outside of the jury's presence. The trial court determined that the video on Defendant's phone showing crack cocaine cooking on a stove next to small baggies containing white powder and then showing Defendant's face was relevant to prove Defendant's identity and his intent to resell the illegal substance. The trial court also determined that the probative value of the video and still images from the video outweighed the risk of unfair prejudice because the content of the evidence outweighed the prejudicial effect.

There is no doubt that the proof offered by the State was evidence of a "bad act." In our assessment, the trial court herein substantially complied with the procedural requirements of 404(b), so our review is limited to whether the admission of the evidence qualified as an abuse of discretion. Our supreme court has stated that the abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this Court to substitute its judgment for that of the trial court. *State v. McCaleb*, 582 S.W.3d 179, 185 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). On review, courts should determine "(1) whether the factual basis for the [trial court's] decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id.* (quoting *Lee Med., Inc.*, 312 S.W.3d at) (citations omitted). Admittedly, the introduction of this evidence is a close call, but we are not

permitted to substitute our judgment for that of the trial court. The trial court did not abuse its discretion in admitting the video and still images as evidence. Defendant is not entitled to relief.

*Sufficiency of the Evidence*

Defendant also challenges the sufficiency of the evidence to support his convictions. Specifically, Defendant notes that he was a passenger in a car with four occupants where cocaine and a firearm were found on the floorboard behind the driver's seat, within reach of several passengers. He further argues that the case is circumstantial and the jury likely convicted him based on the prejudicial video shown to the jury coupled with constructive possession. The State disagrees.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

*A. Possession of Cocaine with Intent to Sell*

One who knowingly possesses .5 grams or more of cocaine with intent to manufacture, deliver, or sell is guilty of a Class B felony. T.C.A. § 39-17-417(a)(4), (c)(1). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances

exist." T.C.A. § 39-11-302(b). Possession can mean either actual or constructive possession. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Likewise, an individual's mere association with a person who does in fact control the drugs or property where the drugs are discovered is also insufficient to support a finding that the person possessed the drugs. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); *Robinson*, 400 S.W.3d at 534. However, constructive possession is determined on a case-by-case basis by the totality of the circumstances and can be proven by circumstantial evidence. *Robinson*, 400 S.W.3d at 534. Moreover, Tennessee Code Annotated section 39-17-419 provides in pertinent part, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." "Other relevant facts" that may give rise to an inference of intent include the absence of drug paraphernalia, the presence of a large amount of cash, the manner of packaging of the drugs, and the street value of the drugs. *See State v. Belew*, 348 S.W.3d 186, 191 (Tenn. Crim. App. 2005) (citing *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999)); *see also State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony concerning the amount and the street value of the drugs was admissible to prove the defendant's intent).

When viewed in a light most favorable to the State, the proof introduced at trial showed that Officer Pace stopped a vehicle for running a stop sign. Defendant fled from the rear driver's side seat of the car. When the vehicle was searched, officers recovered a loaded .45 caliber pistol and a bag of cocaine in the rear driver's side floorboard. Defendant's cell phone was found on the rear driver's side seat. Defendant's phone contained a video of someone cooking powder cocaine to make crack cocaine. Defendant's face is visible in one portion of the video. Further testimony at trial indicated that the amount of crack found in the vehicle was worth about $120 and that a typical user usually purchases around $20 of crack at a time. There is simply nothing in the record to suggest that the illegal drugs in question were for Defendant's personal use. The evidence is sufficient to support this conviction.

*B. Attempted Possession of a Firearm During the Commission of a Dangerous Felony*

Defendant was also convicted of attempted possession of a firearm during the commission of a dangerous felony. *See* T.C.A. § 39-17-1234(a). Tennessee Code Annotated section 39-12-101 defines criminal attempt as follows:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result" and "acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id*. § 39-11-302(a), (b). Defendant's possession of the weapon could be either constructive or actual possession. *See State v. Gerald Dewayne Triplett*, No. W2015-00163-CCA-R3-CD, 2015 WL 9489506, at *5-6 (Tenn. Crim. App. Dec. 29, 2015) (deeming construction possession sufficient where a handgun was found in the glove box of the car the defendant was driving), *perm. app. denied* (Tenn. Mar. 23, 2016).

Here, the gun was found on the floorboard of the car in the seat in which Defendant was riding before he jumped out of the car and fled on foot. Though there was testimony from Ms. Sparkman that Mr. Wilson was in possession of a gun that night, she did not

specify whether that was the same gun that was found in the car and admitted into evidence at trial. Regardless, the evidence is sufficient to support Defendant's conviction for attempted possession of a firearm with the intent to go armed during the commission of a dangerous felony. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE