# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 17, 2024

## STATE OF TENNESSEE v. ANDREW JAMES SKAALERUD

**Appeal from the Criminal Court for Davidson County**
**No. 2021-B-601      Angelita Blackshear Dalton, Judge**

_____

### No. M2023-01595-CCA-R3-CD

_____

The Defendant, Andrew James Skaalerud, appeals from the Davidson County Criminal Court's probation revocation of the three-year sentence he received for his guilty-pleaded conviction for possession with intent to sell or to deliver alprazolam. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Jay Umerley (on appeal), Nashville, Tennessee, and Mark Peckham (at revocation hearing), Clarksville, Tennessee, for the appellant, Andrew James Skaalerud.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Simone Marshall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On April 28, 2021, the Defendant was indicted for possession with the intent to sell or to deliver alprazolam, possession with the intent to sell or to deliver marijuana, two counts of possession of a firearm during the commission of a dangerous felony, unlawful possession of a firearm by a convicted felon, possession of methamphetamine, possession of heroin, possession of lysergic acid diethylamide (LSD), and possession of drug paraphernalia. On January 26, 2022, the Defendant pleaded guilty to possession with the intent to sell or to deliver alprazolam, at which time he received a three-year sentence to be served on probation. The remaining charges were dismissed. Although the guilty plea

hearing transcript is not included in the record, the January 26, 2022 probation order reflects, in relevant part, that the Defendant will obey all laws; will not "receive, own, possess, ship or transport any firearms, ammunition or illegal weapon;" and will not use or possess illegal drugs. The probation order reflects the Defendant's signature.

An August 16, 2023 probation violation warrant alleged that on August 16, 2023, various law enforcement agencies conducted a search of the Defendant's home based upon an anonymous tip that the home was "being used to move drugs in and out of the residence and pool house on Sundays." The search revealed an unlocked "stand up gun safe," which contained multiple rifles and handguns. The warrant alleged that one of the handguns belonged to the Defendant because "the box the gun holster came in" was found inside the Defendant's bedroom and that ATF agents confirmed with the Defendant's father that the handgun belonged to the Defendant. The warrant also alleged that "[h]undreds, if not thousands of rounds" of ammunition were found throughout the property, including the Defendant's bedroom and truck, and that State and federal prosecutions were expected to commence in the future. In addition to the firearms and ammunition, the warrant alleged that a white powdery substance was found during a search of the Defendant's truck, that the substance was field-tested, and that the substance was positive for cocaine. Three separate "crack pipes" were found inside the truck's console.

At the October 13, 2023 probation revocation hearing, probation officer Kyle Reardon testified that he began supervising the Defendant in Wilson County in March 2022. Mr. Reardon stated that initially, the Defendant was placed on "moderate supervision" status but that the status was lowered after a follow-up risk and needs assessment resulted in a "low" score. Mr. Reardon stated that after the follow-up assessment, the Defendant was required to report to the probation office every four months and to undergo an annual home inspection.

Mr. Reardon testified that on August 16, 2023, he searched the Defendant's home after receiving an anonymous tip that the pool house at the Defendant's home was being used to manufacture and sell methamphetamine. Mr. Reardon said the tip included information that there was "traffic going in and out" of the home on Sundays. He said that as a result of the tip, he scheduled a home visit with the Defendant, who lived with his parents. Mr. Reardon said that Wilson County Sheriff's detectives and Lebanon Police detectives assisted with the search, which began at 9:00 a.m. and ended around 1:00 p.m.

Mr. Reardon testified that the Defendant and his parents sat in the living room with a police officer while Mr. Reardon conducted a cursory search of the Defendant's bedroom. Mr. Reardon said that the detectives searched the pool house, the kitchen, the office, and the Defendant's parents' bedroom. Mr. Reardon said that inside the Defendant's bedroom he found

a lot of drug paraphernalia; bangers used to smoke either methamphetamine or marijuana. There was burnt tinfoil in a garbage bag, as well as a -- well, not filled boxes of ammo. And . . . give me one second. . . . There was a bong in -- a water pipe in the corner of [the Defendant's] bedroom, as well as a couple of cut straws on his nightstand.

Mr. Reardon stated that he also found in the bedroom "small crystalline bags," which he concluded based upon his training were used to store narcotics, a firearm "scope" still inside the packaging, and "the box for the Palmetto ghost gun that we found in the actual stand-up gun safe."

Mr. Reardon testified that he next searched the Defendant's father's office, which contained the open, unlocked gun safe. Mr. Reardon said that the safe contained a short-barrel rifle, "a few hunting rifles," the handgun "that was in the ghost holster," hundreds of rounds of ammunition, and sound "suppressors that were not labeled or marked." Mr. Reardon stated that after the firearms and unmarked suppressors were found, one of the detectives contacted the ATF, who interviewed the Defendant and the Defendant's parents. Mr. Reardon said that the Defendant's father accepted responsibility for all the weapons in the safe.

Photographs of the items seized during the search of the Defendant's home and truck were received as a collective exhibit. Mr. Reardon testified that he and a detective searched the Defendant's truck and that Mr. Reardon found three homemade "crack cocaine pipes" inside the console. He said that the pipes contained residue and that the pipes appeared to be for personal use. He said that a white powdery substance was on the front passenger seat, that "a narc cocaine ID swipe" test was performed on the substance, and that the analysis showed the substance was cocaine.

Mr. Reardon testified that inside the pool house, he found storage "bins full of what appear[ed] to be rifle" ammunition. He said that the bins were not locked and that the bins contained approximately 200 bullets. He said that a scale was found inside the Defendant's father's vehicle, although Mr. Reardon was unsure of any significance of the scales.

On cross-examination, Mr. Reardon testified that he did not obtain a search warrant based upon the anonymous tip because the probation order permitted him to conduct the search without a warrant. He said that he did not find evidence showing that drugs were being sold or distributed from the pool house and that he did not find drugs or drug paraphernalia, other than burnt foil, inside the pool house. He agreed that he found drug paraphernalia inside the Defendant's bedroom. Mr. Reardon said that the Defendant's possession of the empty cardboard box connected to the ghost gun inside the safe did not violate the Defendant's conditions of probation. Mr. Reardon said that the Defendant's

possession of the firearm "scope" found in his bedroom did not violate the Defendant's probation.

Mr. Reardon testified that the gun safe was inside the Defendant's father's office and that although the safe was unlocked, the door to the room was closed. Mr. Reardon stated that he was authorized to search any area of the home to which the Defendant had access. When asked if the Defendant had access to the office, Mr. Reardon stated that the Defendant had access because the door was unlocked. Mr. Reardon said that he did not search the Defendant's parents' bedroom, although the detectives searched their bedroom.

Mr. Reardon testified that two vehicles were at the home and that the Defendant's identification, credit cards, and keys were inside the black truck, which was unlocked. Mr. Reardon said that the other vehicle was a white sedan, which belonged to the Defendant's father, and that the sedan was searched because the Defendant had access to it. Mr. Reardon recalled that the sedan was unlocked and that the keys to the car were in the kitchen.

Mr. Reardon testified that the conditions of probation prohibited the Defendant from possessing firearms and ammunition. Mr. Reardon said that the Defendant was not prohibited from possessing "black powder" rifles, pellet guns, and cross bows. Referring to a photograph of a target near the pool, he agreed that the target was likely used for a pellet gun based upon the condition of the wood fence behind the target. He agreed that use of a pellet gun did not violate the Defendant's probation.

The Defendant testified that if the trial court allowed him to remain on probation, he would obtain an apartment in Nashville. He said he had financial means and had been employed for five years at Sunbelt Rentals as a scaffolding foreman. He said he also performed "stage rigging" for Rhino Productions at Bridgestone Arena. The Defendant said that he understood he could not live with his parents any longer because the "environment ha[d] not been conducive to me not getting arrested."

On cross-examination, the Defendant stated that he would obtain an apartment in Davidson County, that he owned a car, and that he had a current driver's license. He understood that he could not live in a home in which firearms and ammunition were present and was aware when he was placed on probation that he could not live in a home in which firearms and ammunition were present.

The trial court determined that possession alone of the empty firearm box and of the firearm scope did not violate the conditions of the Defendant's probation. The court stated, though, that in light of all of the evidence, possession of the firearm box "provides enough connection to place [the Defendant], even if not in actual possession, in constructive

possession of the weapon that was found." The court determined that the search of the unlocked office in which the firearms and ammunition were found was not unreasonable because everyone present in the home had access to the room. The court determined, as well, that "with the paraphernalia, . . . the testimony places that in [the Defendant's] -- at least preponderance of the evidence in [the Defendant's] possession." As a result, the court determined that the Defendant violated the conditions of his release and revoked his probation.

In considering the appropriate consequence, the trial court noted the Defendant's testimony regarding his financial means to obtain an apartment, but the court expressed concern about the "serious nature of the alleged offenses." The court also noted the likely federal prosecution against the Defendant for serious firearm-related offenses. The court ordered the Defendant to serve the remainder of his three-year sentence in confinement. This appeal followed.

The Defendant contends that the trial court erred by revoking his probation and ordering him to serve the remainder of his three-year sentence in confinement. He argues that the court abused its discretion by determining that he constructively possessed a firearm. He argues, as well, that the trial court abused its discretion by revoking probation for possession of drug paraphernalia because it was not alleged in the probation violation warrant. The State responds that the court did not abuse its discretion by ordering the Defendant to serve his sentence.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2022), -310 (Supp. 2022). When the court orders a sentence into execution, the court "may give credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time." *Id*. § 40-35-310; *see id*. § 40-35-311(e)(2) (Supp. 2022). When determining whether to "award credit for time successfully spent on probation" before revocation, a court "may consider 'the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character.'" *State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (quoting *Dagnan*, 641 S.W.3d at 759 n.5). A court's determination whether "to award or deny credit for time served on probation" is reviewed for an abuse of discretion. *Williams*, 673 S.W.3d at 259. "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

### A.     Constructive Possession of Firearms and Ammunition

The record reflects that the probation violation warrant alleged that the Defendant violated the condition of his release prohibiting him, in relevant part, from possessing firearms and ammunition. The basis for the violation allegation was constructive possession of firearms, and arguably ammunition, because of the unlocked and open gun safe containing firearms and ammunition, which was inside the Defendant's father's unlocked office. Additionally, the warrant alleged that ammunition was found, in relevant part, inside the Defendant's bedroom and truck. However, the proof at the revocation hearing did not show that ammunition was found inside the Defendant's truck. The record is ambiguous whether ammunition was found inside the Defendant's bedroom. Although Mr. Reardon initially testified that "not filled boxes of ammo" were found inside the bedroom, the record reflects that Mr. Reardon paused in his testimony before returning to drug-related items. Mr. Reardon was not asked to clarify whether ammunition was found inside the Defendant's bedroom. As a result, the trial court's focus was on whether the Defendant constructively possessed the firearms inside the open gun safe inside the unlocked office.

Possession may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession requires a showing that a defendant had "the power and intention at a given time to exercise dominion and control over . . . [the item] either directly or through others." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (internal quotations and citation omitted). "'In essence, constructive possession is the

- 6 -

ability to reduce an object to actual possession.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979)). "Constructive possession depends on the totality of the circumstances in each case" and "may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing T.C.A. § 39-17-419 (2006) (subsequently amended)).

The record reflects that the Defendant lived at his parents' home, which contained the Defendant's father's unlocked office. An unlocked and open gun safe was found inside the office. Inside the Defendant's bedroom, a search revealed a firearm scope and an empty gun box, which was connected to a firearm found inside the unlocked safe. The evidence shows that the Defendant had access to the office and to the unlocked and open gun safe. Likewise, the evidence shows that, even in the absence of proof showing the Defendant actually possessed the firearm connected to the empty gun box, he had the ability to possess the firearm, or any of the firearms inside the gun safe, at any time by removing a firearm from the unlocked and open safe inside the unlocked office. The trial court did not abuse its discretion by determining that the Defendant violated his probation by constructively possessing the firearms inside the gun safe.

## B. Notice and Possession of Drug Paraphernalia

The record reflects that the probation violation warrant also alleged that the Defendant violated the probation supervision rule prohibiting him, in relevant part, from using or possessing illegal drugs. The violation allegation in the warrant was based upon the "crack pipes" found inside the console of the Defendant's truck and the substance on the passenger seat, which was field-tested to be cocaine. Although the evidence at the revocation hearing reflects that the Defendant's bedroom contained drug paraphernalia, including "bangers" used for smoking methamphetamine or marijuana, burnt foil, cut straws, a "water pipe," and "small crystalline bags" used to store narcotics, the basis for revocation as alleged in the warrant was limited to the Defendant's possession of a controlled substance and drug paraphernalia in his truck. The Defendant correctly notes in his brief that due process principles require proper notice of the allegations serving as the basis to revoke probation. *See State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993); *see also Gagnon v. Scarpelli*, 411 US 778, 786 (1973) (stating that minimum due process requirements provide that a defendant must receive written notice of the claimed probation violation). The probation revocation warrant provided sufficient notice of the allegation against the Defendant.

After receiving the proof, the trial court's focus was primarily on whether the Defendant possessed firearms in violation of his probation. However, relative to possession of drug paraphernalia, the court determined, without further explanation, "Even with the paraphernalia, you know that definitely places -- the testimony places that in [the

Defendant's] -- at least preponderance of the evidence in [the Defendant's] possession." Although the court did not refer specifically to the items found inside the Defendant's truck, the court was limited by the allegations contained in the warrant as a basis to revoke the Defendant's probation. The warrant only alleged that cocaine and crack pipes were found inside the truck. The warrant did not allege that drug paraphernalia was found inside the Defendant's bedroom.

In this regard, the record reflects that Mr. Reardon searched the Defendant's truck, which was unlocked and contained the Defendant's identification, credit cards, and keys. The search revealed three crack pipes containing drug residue inside the console, along with a white powdery substance on the passenger seat. Mr. Reardon stated that the pipes appeared to be for personal drug use. The substance on the seat was field-tested and was positive for cocaine. Photographs of the drug paraphernalia, along with the Defendant's identification and credit cards, found inside the truck were received as part of a collective exhibit. A logical inference to be drawn from the Defendant's possession of the pipes with drug residue and of cocaine was that he possessed and used an illegal substance. As a result, the trial court did not abuse its discretion by revoking the Defendant's probation on the basis that he possessed drug paraphernalia in order to use cocaine in violation of the conditions of his release.

## C.     Order to Serve the Remainder of Sentence

The record, likewise, supports the trial court's determination to order the Defendant to serve the remainder of his probationary sentence in confinement. The court considered "all the circumstances" surrounding the present case and the likelihood that the Defendant faced federal firearm-related charges based upon the items found during the search. The court noted its concern "with the very serious nature of the alleged offenses," and concluded that requiring the Defendant to serve the remainder of his sentence in confinement was warranted. The court did not abuse its discretion by ordering the remainder of the Defendant's sentence into execution. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE